# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

                      Plaintiff,

    vs.

JOSE LUIS REYNALDO REYES-CASTILLO, *et al.*,

                   Defendants.

Case No.: 2:19-cr-00103-GMN-MDC

**ORDER DENYING MOTION TO PERMIT AND GRANTING MOTION TO EXCLUDE (REDACTED VERSION)[1]**

Pending before the Court is the Motion to Permit Testimony Related to Defendant Perez-Manchame's Continued Association with the MS-13 Enterprise, (ECF No. 509), filed by the United States of America (the "Government"). Defendant Perez-Manchame filed a Response, (ECF No. 530). Further pending before the Court is the Motion to Seal, (ECF No. 510), filed by the Government. Finally pending before the Court is the Motion in Limine to Exclude Alleged NSDC Drug Sale & Drug Possession Evidence, (ECF No. 511), filed by Defendant Perez-Manchame.

For the reasons discussed below, the Court GRANTS Perez-Manchame's Motion to Exclude, (ECF No. 511), DENIES the Government's Motion to Permit, (ECF No. 509), and GRANTS the Motion to Seal, (ECF No. 510).

## I. **BACKGROUND**

Defendants Perez-Manchame, Reyes-Castillo, and Vargas-Escobar are charged in count one of the Third Superseding Indictment (the "Indictment"), (ECF No. 223), with conspiring to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d) (the "RICO

---

[1] For security reasons, some portions of this Order are redacted. An unredacted copy is available on the docket under seal.

Conspiracy"). (Indictment 2:1–19:1, ECF No. 223).  The Indictment states that the Defendants conspired "to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity," beginning on "a date unknown" and "continuing up through and including" the date on which the Indictment was filed. (*Id.* 8:19–9:5).  The Indictment also provides a list of overt acts the Defendants committed in furtherance of the RICO Conspiracy. (*Id.* 10:17–15:15).  The first overt act alleges that Defendants distributed and possessed with intent to distribute marijuana and methamphetamine beginning "on a date unknown" and "continuing through to on or about March 2, 2018." (*Id.* 11:1–5).

(Mot. Permit 4:4–5, ECF No. 509).  In that interview, Torres-Escobar stated that he obtained "K2," a synthetic cannabinoid, from Defendant Perez-Manchame. (*Id.* 4:6–16).  Torres-Escobar explained that Perez-Manchame

The Government also alleges that Perez-Manchame

## II. LEGAL STANDARD

### A. Other Act Evidence Under FRE 404(b)

Evidence of "other crimes, wrong, or acts" is subject to Federal Rule of Evidence ("FRE") 404(b) unless the evidence is "directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citation omitted). Evidence is "inextricably intertwined" when it either constitutes a portion of the transaction giving rise to the criminal charge or is necessary to allow the prosecution "to offer a coherent and comprehensible story regarding the commission of the crime[.]" *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995). "In determining whether particular evidence is necessary to the prosecution's 'coherent and comprehensible story,'" the relevant inquiry is "whether the evidence bears directly on the charged crime." *United States v. Wells*, 879 F.3d 900, 928–29 (9th Cir. 2018). "There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Vizcarra-Martinez*, 66 F.3d at 1013.

In a conspiracy case, the government "may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011); *see also United States v. Nelson*, No. 17-CR-00533, 2023 WL 4004113, at *17 (N.D. Cal. June 13, 2023) (citing *Rizk* with approval in

RICO conspiracy case). This proof may include uncharged acts. *See United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994).

If evidence of "any other, wrong, or act" does not qualify as direct evidence, the Court must evaluate it under Federal Rule of Evidence 404(b). Fed. R. Evid. 404(b)(1). That Rule provides that such evidence is inadmissible to prove character or criminal propensity, but may be admissible for other purposes, "such proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Further, a prosecutor intending to offer FRE 404(b) evidence in a criminal case must provide reasonable notice of the evidence in writing along with an articulation in the notice of "the permitted purpose for which the prosecutor intends to offer the evidence." Fed. R. Evid. 404(b)(3)(A)– (C). This Court previously ordered that the Government must provide notice of any FRE 404(b) evidence at least thirty days prior to trial. (*See* Notice Order, ECF No. 235).

The Ninth Circuit follows a four-part test to determine whether a prior bad act is admissible: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). The evidence is admissible if the Court finds that each element is proven by a preponderance of the evidence. Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

**B. Motion to Seal**

The public has a presumptive right to inspect and copy judicial records and documents. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). The Ninth Circuit has recognized that two different standards may apply when a request to seal a document is made in connection with a motion—namely, the "compelling reasons" standard or the "good cause" standard. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97

(9th Cir. 2016); *see United States v. Ochoa-Garcia*, No. 3:97-cr-00077-RCJ-VPC, 2023 WL 8111765, at *3 (D. Nev. Nov. 22, 2023) (applying the *Ctr. for Auto Safety* standard in the criminal context).  The compelling reasons standard applies to any sealing request made in connection with a motion that is "more than tangentially related to the merits of a case." *Id*. at 1099, 1101.  Under the good cause standard, a party requesting sealing must show that, for "each particular document" it seeks to seal, "prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Under the compelling reasons standard, a court may seal a record only if it finds "compelling reasons" to support such treatment and articulates "the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for Auto Safety*, 809 F.3d at 1096–97.  Compelling reasons exist when "such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1097 (internal quotations and citations omitted).

The compelling reasons must be "supported by specific factual findings," that outweigh "the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178–79 (internal quotations and citations omitted).  The Ninth Circuit has rejected efforts to seal documents under the "compelling reasons" standard based on "conclusory statements about the contents of the documents–that they are confidential" and that, in general, their disclosure would be harmful to the movant. *Id*. at 1182.  Furthermore, any "requests to seal documents must be 'narrowly tailored' to remove from the public sphere only the material that warrants secrecy." *Florence v. Cenlar Fed. Sav. & Loan*, No. 2:16-cv-00587, 2017 WL 1078637, at *2 (D. Nev. Mar. 20, 2017) (internal citations omitted).

///

///

### III.    DISCUSSION

In its Motion to Permit, the Government argues that Torres-Escobar's statements recounting Perez-Manchame's sale of K2 to him and to other MS-13 members are admissible as direct evidence of the charged RICO conspiracy. (Mot. Permit 5:20–9:22).  In both his Response to that Motion and in his separate Motion to Exclude, Defendant Perez-Manchame argues that the statements are not admissible as direct evidence of the charged RICO Conspiracy and are instead inadmissible under both FRE 404(b) and 403. (Resp. 5:5–10:16); (Mot. Exclude 3:18–7:28, ECF No. 511).

The Court addresses each argument in turn.

**A.  Torres-Escobar's Statements are Not Direct Evidence of the RICO Conspiracy**

The Government's argument proceeds in two steps: first, the fact that the in-custody sale of K2 is not itself an overt act charged in the Indictment does not bar admission of the statements because the Government "is not limited in its proof to the overt acts charged in the indictment." (Mot. Permit 6:7–8:20) (quoting *Rizk*, 660 F.3d at 1131) (internal quotation marks omitted).  Second, the statements are admissible as direct evidence of the RICO Conspiracy because they will be used to rebut Perez-Manchame's "attempts to mislead the jury" that he stopped associating with MS-13 in December 2017. (*Id.* 8:21–9:22).  In Response, Perez-Manchame argues that evidence of the K2 sale is not admissible as direct evidence of the RICO Conspiracy because the Indictment "confines the pattern of racketeering activity relating to alleged drug distribution on behalf of the MS-13 enterprise" as ending on or about March 2, 2018, well before the K2 sale here occurred. (Resp. 4:17–22); (Mot. Exclude 3:18–6:21).

**1.  The Timing of the Alleged K2 Sales Does Not Bar Admission**

As an initial matter, evidence which falls outside the temporal scope of a conspiracy is not admissible as direct evidence of the conspiracy. *See United States v. Montes de Oca*, 110 F.3d 71 (9th Cir. 1997) (finding that evidence of an incident which "fell outside of the specific

dates defining the conspiracy charged in the indictment" could not "constitute direct evidence of the conspiracy"); *United States v. McGill*, 815 F.3d 846, 883 (D.C. Cir. 2016) (finding a murder was not part of the charged conspiracy in part because it occurred before the charged conspiracy began).

The parties agree that evidence presented by the prosecution is not limited to the overt acts charged in the Indictment. (*See* Resp. 4:12–14).  The core of the dispute here is whether evidence of drug distribution or possession with intent to distribute is temporally confined by the first overt act of the Indictment to incidents taking place before or on March 2, 2018.  Here, the Government argues that Torres-Escobar's statements describing Perez-Manchame's K2 sales fall within the scope of the broader RICO Conspiracy, which extends up to and including February 25, 2025, the date on which the most recent Indictment was filed. (Mot. Permit 6:7–8:20).  Perez-Manchame contends that because the K2 sales relate to "alleged drug distribution on behalf of the MS-13 enterprise," they may only qualify as direct evidence if they took place on or before March 2, 2018. (Resp. 4:17–5:8).

Here, the Court finds that the K2 sales do not relate to any of the overt acts charged in the Indictment.  While the first charged overt act does relate to drug distribution on behalf of the MS-13 enterprise, it cannot sweep-in the alleged K2 sales here because (1) it refers to street activity which occurred prior to the Defendants' arrest, and (2) it refers only to marijuana and methamphetamine, substances wholly separate from K2.  However, the fact that the K2 sales here occurred after the end of the first over act's timeframe does not bar their admission. Further, because the Government "is not limited in its proof to the overt acts alleged in the indictment," and the alleged K2 sales here occurred before the end date of the charged RICO Conspiracy, the timing of those sales alone does not bar their admission. *Rizk*, 660 F.3d at 1131.

///

///

**2. The Alleged K2 Sales Are Not Inextricably Intertwined with the Charged RICO Conspiracy**

Evidence of "any other crime, wrong, or act" is admissible as direct evidence if it is "directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citation omitted). Evidence is "inextricably intertwined" when it either constitutes a portion of the transaction giving rise to the criminal charge or is necessary to allow the prosecution "to offer a coherent and comprehensible story regarding the commission of the crime[.]" *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995). Under either category, the Government "must make an affirmative showing how proof of each incident it seeks to admit constitutes proof of the scope of a charged conspiracy." *United States v. Cervantes*, 170 F. Supp. 3d 1226, 1234 (N.D. Cal. 2016) (citing *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004)). For the reasons discussed below, the Court finds that the Government has failed to do so here.

With respect to the first category, "[t]he policies underlying [Rule] 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *Vizcarra–Martinez*, 66 F.3d at 1012 (quoting *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)) (internal quotation marks omitted). For example, the *Williams* court found that contemporaneous sales of cocaine and crank by the defendant were inextricably intertwined with the sale of cocaine, the crime with which the defendant was charged. 989 F.2d at 1070. In *United States v. Lillard*, the court found no error occurred in admitting evidence that a defendant stole "cocaine from the very shipment that provided the basis for his involvement in the [charged] conspiracy to possess and distribute cocaine." 354 F.3d at 854. Further, in *United States v. Yandell*, another court in this Circuit evaluated whether evidence of other acts were "inextricably intertwined"

with the charged RICO Conspiracy by considering whether the acts provided evidence of the existence and nature of the enterprise's affairs, and the defendant's knowledge of the enterprise's activities. No. 2:19-cr-00107-KJM, 2024 WL 694373, at *3–4 (E.D. Cal. Feb. 20, 2024).

Here, the Court finds that the Government has not made an affirmative showing that the alleged K2 sales constitute "a part of the transaction that serves as the basis for" the charged RICO Conspiracy. *Vizcarra-Martinez*, 66 F.3d at 1012.  For example, the Government does not suggest that Perez-Manchame sold K2 provided by or under the direction of other MS-13 members, nor that he sold K2 *exclusively* to other MS-13 members.  In *Yandell*, the district court admitted evidence of an uncharged attempted murder and murder because they were both commissioned by other members of the enterprise and thus demonstrated the inner workings of the enterprise and the defendant's knowledge of them. 2024 WL 694373 at *3–4.  While the Government contends that the K2 sales show Perez-Manchame's continued participation in MS-13, they failed to provide or explain the nexus.  Instead,  he could have been simply acting alone when he sold K2.  Further, while he may have sold K2 to other MS-13 members, he very well may have sold K2 to non-MS-13 members as well.  Without articulating a link between the sale of K2 and the affairs of the MS-13 enterprise, the Government cannot prevail on an affirmative showing that the alleged K2 sales constitute a part of the charged RICO Conspiracy.

Regarding the second category, the Ninth Circuit has explained that "it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *Vizcarra-Martinez*, 66 F.3d at 1013.  For example, in *United States v. Daly*, the Ninth Circuit found that evidence of a shoot-out was "inextricably intertwined" with the charge that the defendant was a felon in possession of a firearm because it "was necessary to put [the defendant's] illegal conduct into context and to rebut his claims of self defense." 974 F.2d 1215,

1216 (9th Cir. 1992).  The Government here argues that the alleged K2 sales are necessary to rebut Perez-Manchame's theory that he stopped associating with MS-13 in December 2017. (Mot. Permit 8:23–9:22) (citing *United States v. Beltran-Rios*, 878 F.2d 1208, 1213 (9th Cir. 1989) (finding testimony "necessary to rebut the inference that defense counsel attempted to create")).  Perez-Manchame contends in Response that evidence of the alleged K2 sales is not admissible for that purpose because he has not presented an affirmative defense of withdrawal. (Resp. 8:16–23).

Here, as with the first category, the Court again finds that the Government has not made an affirmative showing that the alleged K2 sales are "necessary to offer a coherent and comprehensible story regarding the commission of the crime[.]" *Vizcarra-Martinez*, 66 F.3d at 1012–13.  The alleged K2 sales do not tend to rebut Perez-Manchame's assertion that he stopped associating with MS-13 in December 2017 because, as explained above, they do not confirm his continued membership in the enterprise.  The Government has not made an affirmative showing that Perez-Manchame sold K2 as part of his participation in MS-13, like that he only sold K2 derived from, at the direction of, or only to members of MS-13.  Further, as Perez-Manchame points out, the Government plans to present other evidence which *does* tend to show Perez-Manchame's continued association with MS-13, including that he was "'jumped in' as a homeboy in MS-13," that he "obtained MS-13 related tattoos," and "communicated threats to witnesses on behalf of MS-13." (Mot. Permit 8:11–15).  Thus, the evidence of alleged K2 sales does not tend to rebut an aspect of the defense, nor is it necessary for the Government to do so.[2]

Accordingly, the Court finds that evidence of the alleged K2 sales is not admissible as direct evidence of the charged RICO Conspiracy and is thus subject to the requirements of FRE

---

[2] Because the Court concludes that evidence of the alleged K2 sales is not direct evidence under the second category, it need not determine whether evidence falls under that category only when necessary to rebut an *affirmative defense* raised by the defendant.

404(b).[3]

### B. Torres-Escobar's Statements are Inadmissible Under FRE 404(b)

The Court next considers whether Torres-Escobar's statements regarding Perez-Manchame's alleged sale of K2 ▮▮▮▮ are admissible under FRE 404(b).  In determining whether to admit evidence under FRE 404(b), the Ninth Circuit has instructed district courts to consider whether (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).

There are several problems here which bar admission under that Rule.  First, the Government has not articulated a permissible use for the alleged K2 drug sales under FRE 404(b)(2). (*See generally* Mot. Permit).  Moreover, the Government has not provided any evidence corroborating Torres-Escobar's allegations that Perez-Manchame ▮▮▮▮▮▮ ▮▮▮▮▮▮ casting doubt on whether Perez-Manchame committed that act.  More still, the Government did not provide notice of these statements until March 22, 2026, despite conducting its interview ▮▮▮▮▮▮▮▮▮. (Resp. 10:6–8).  Not only does this run afoul of FRE 404(b)(3)(A)'s requirement that the prosecution provide "reasonable notice" of FRE 404(b) evidence, it directly violates this Court's order requiring notice of FRE 404(b) evidence thirty days prior to trial. Fed. R. Evid. 404(b)(3)(A); (*see* Notice Order).

In sum, the Court finds that Torres-Escobar's statements regarding Perez-Manchame's ▮▮▮▮▮▮▮▮ are not direct evidence of the charged RICO Conspiracy and are inadmissible under FRE 404(b).

---

[3] The parties also raise arguments relating to issues that admission of this evidence would create ▮▮▮▮▮▮. However, because the Court concludes that the evidence of alleged K2 sales is inadmissible, it need not grapple with those issues.

**C. Motion to Seal**

Finally, the Court turns to the Government's Motion to Seal, where it explains that its Motion to Permit should be sealed because it ███████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

The Court first finds that this Motion, which seeks to permit the admission of evidence at trial, is "more than tangentially related to the merits" of the case, and thus the compelling reasons standard applies. *Ctr. for Auto Safety*, 809 F.3d at 1099, 1101. Second, the Court finds that protecting the timing of a cooperating witness's testimony and information which may cause █ ████████████████████████████████████ are compelling reasons to seal the Government's motion. *Id.* at 1097 (explaining that compelling reasons exist when "court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets"). The Court thus GRANTS the Motion to Seal.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Permit Testimony Related to Defendant Perez-Manchame's Continued Association with the MS-13 Enterprise, (ECF No. 509), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion in Limine to Exclude Alleged NSDC Drug Sale & Drug Possession Evidence, (ECF No. 511), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Seal, (ECF No. 510), is **GRANTED**.

**DATED** this __3__ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court