**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.

JOSE LUIS REYNALDO REYES-CASTILLO, *et al.*,

            Defendants.

Case No.: 2:19-cr-00103-GMN-MDC

**ORDER DENYING MOTION TO COMPEL**

Pending before the Court is the Motion to Compel, (ECF No. 524), filed by Defendant Jose Luis Reynaldo Reyes-Castillo.  Defendant Joel Vargas-Escobar filed a Joinder, (ECF No. 528).  The Government filed a Response, (ECF No. 527), and thereafter filed a Supplemental Response, (ECF No. 539), to which Defendant Reyes-Castillo filed a Reply, (ECF No. 557).

For the reasons discussed below, the Court DENIES Defendant Reyes-Castillo's Motion to Compel, (ECF No. 524), and GRANTS Defendant Vargas-Escobar's Joinder, (ECF No. 528).

## I. <u>BACKGROUND</u>

On February 25, 2025, a federal grand jury returned a Third Superseding Indictment ("Indictment"), (ECF No. 223), charging Defendants Jose Luis Reynaldo Reyes-Castillo, David Arturo Perez-Manchame, Joel Vargas-Escobar, and Alexander De Jesus Figueroa-Torres[1] with 34 counts consisting of various interrelated offenses in furtherance of a criminal enterprise: the Mara Salvatrucha gang, commonly known as MS-13. (*See generally* Indictment, ECF No. 223). The charged offenses include 18 U.S.C. §§ 1962(d) (RICO Conspiracy), 1959(a)(1) (Murder in

---

[1] Defendant Alexnader Figueroa-Torres pleaded guilty to counts 1–4 of the Indictment on January 21, 2026. (*See* Change of Plea Minutes, ECF No. 365).

Aid of Racketeering), 1959(a)(1) (Kidnapping in Aid of Racketeering), 1959(a)(5) (Attempted Murder in Aid of Racketeering), 924(c)(1)(A) (Using or Carrying a Firearm During a Crime of Violence), 924(j) (Causing Death Through the Use of a Firearm), and 2 (Aiding and Abetting). (*See generally id.*).  A jury trial commenced in this case on March 23, 2026. (Minutes, ECF No. 430).

On April 27, 2026, Los Angeles Police Department ("LAPD") Detective Carlos Camacho testified that Angel Rivas, a member of MS-13, was an informant who assisted with the LAPD's investigation into MS-13 from 2017 to about 2023. (Transcript 4/27/2026 32:11, ECF No. 512).  Det. Camacho testified that during that time, he had several conversations with Rivas about MS-13, which were documented through various notes and reports. (*Id.* 29:6–30:9).  Det. Camacho stated that he had provided the Government with notes on the information that Rivas had given him about MS-13, and that there were no additional notes or documents that had not been provided to the Government. (*Id.* 30:6–12).  The Government explains that Rivas is expected to testify about an incident on February 13, 2018, where Rivas allegedly received a firearm from Defendant Reyes-Castillo.  The Government states that it "does not anticipate eliciting any testimony from the informant about specific acts or events undertaken as part of his work as an informant, other than the instant gun acquisition." (Resp. 7:14–16, ECF No. 527).

Reyes-Castillo states that "[t]o date, the government has provided a single FBI 302 and corresponding notes of an interview with Mr. Rivas on February 12, 2026, and a letter documenting a follow-up phone call with Mr. Rivas on April 15, 2026." (Mot. Compel 2:12–14, ECF No. 524).  The Government asserts that it has provided the following to the Defense: (1) a document relating to a firearm that was stolen in Las Vegas; (2) multiple pictures of hand-written notes documenting monikers of MS-13 members in Los Angeles, Mendota, and Las Vegas, some of which included phone numbers; (3) a property report from the LAPD

documenting a Springfield Armory XDS pistol that was taken into LAPD custody on February 14, 2018; (4) a document containing California Department of Motor Vehicles information for Reyes-Castillo; (5) a chart documenting the monikers of MS-13 members throughout the United States; and (6) a "Chrono Entry" documenting Rivas's acquisition of the firearm on February 13, 2018, and acquisition by the LAPD on the following day. (Resp. 3:3–15).

Reyes-Castillo now moves to compel production of "the full chronology log and any other reports, notes, and other documents containing statements of Angel Rivas concerning MS-13 by Det. Camacho or any other officer of the LAPD, LVMPD, or HSI." (Mot. Compel 3:9–11).  Reyes-Castillo contends that he is entitled to production of these documents under three bases: (1) Federal Rule of Criminal Procedure 16(a)(1)(E)(i), (2) Federal Rule of Criminal Procedure 26.2, and (3) the Jencks Act, 18 U.S.C. § 3500. (*See generally id.*).  The Government contends that the documents requested by Reyes-Castillo "have never been in the possession of the United States." (Resp. 7:20–21).

**II. LEGAL STANDARD**

    **A.  Rule 16(a)(1)(E)(i)**

Rule 16(a)(1)(E)(i) provides that, upon a defendant's request, the "government must permit the defendant to inspect and to copy or photograph" documents which are "within the government's possession, custody, or control" and are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i).  This Rule "grants criminal defendants a broad right to discovery," *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010), and sweeps in evidence which will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Liquid Sugars, Inc.*, 158 F.R.D. 466, 471 (E.D. Cal. 1994) (citation omitted) (internal quotations omitted).

The scope of Rule 16(a)(1)(E)(i) is constrained to documents which are in the Government's "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E).  Under *Brady v,*

*Maryland*, 373 U.S. 83 (1963), and Rule 16,[2] the Government "has no obligation to produce information which it does not possess or of which it is unaware." *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019). "Possession is not limited to what the prosecutor personally knows," but instead, "[b]ecause prosecutors are in a 'unique position to obtain information known to other agents of the government,' they have an obligation to 'disclos[e] what [they] do[] not know but could have learned." *Id.* at 1023 (quoting *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc)).

The Ninth Circuit has cautioned that this standard must be applied on a case-by-case basis assessing the prosecutors' "knowledge of and access to the documents sought by the defendant" to determine what can be deemed to be in their actual or constructive possession. *Id.* at 1025 (quoting *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)). Federal prosecutors "will be deemed to have knowledge of and access to anything in the possession, custody, or control of any *federal* agency participating in the same investigation of the defendant." *Bryan*, 868 F.2d at 1036 (emphasis added). Conversely, federal prosecutors are not presumed to have had access to state agencies' records. *United States v. Cervantes*, No. 21-CR-328-YGR-1, 2024 WL 3101014, at *6 (N.D. Cal. June 24, 2024) (citing *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995)). This presumption is not absolute, however—a prosecutor has a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Price*, 566 F.3d 900, 908–09 (9th Cir. 2009) (finding that federal prosecution was in "possession" of *Brady* material because it was held by a state police officer who served as the prosecution's "lead investigative agent").

///

---

[2] "The 'possession' element of *Brady* is treated as coextensive with that of Rule 16." *United States v. Cano*, 934 F.3d 1002, 1023 n. 16 (9th Cir. 2019) (citing *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989) (using the same "knowledge and access" test to determine "possession" for both Rule 16 and *Brady*)).

Rule 16(a)(2) provides that, except as permitted by Rule 16(a)(1)(A)–(D), (F), and (G), discovery or inspection of statements made by prospective government witnesses is not authorized except as provided in the Jencks Act, 18 U.S.C. § 3500. Fed. R. Crim. P. 16(a)(2).

**B.  The Jencks Act and Rule 26.2**

"The Jencks Act mandates that after a witness called by the United States testifies on direct, the United States must, on motion by the defendant, produce any statement of the witness in the possession of the United States that relates to the subject matter testified to by the witness." *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) (quoting *United States v. Riley*, 189 F.3d 802, 805 (9th Cir. 1999) (internal quotations omitted)); 18 U.S.C. § 3500(b). The Jencks Act defines a "statement" as (1) "a written statement made by said witness and signed or otherwise adopted or approved by him;" (2) "a stenographic mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement;" or (3) "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C. §§ 3500(e)(1)–(3).

Rule 26.2 "contains the substance of the Jencks Act." *United States v. McKoy*, 78 F.3d 446, 450 (9th Cir. 1996) (citing *United States v. Conners*, 825 F.2d 1384, 1389 (9th Cir. 1987)); *United States v. Steele*, No. MJ20-252MAT-RSL, 2020 WL 4726704, at *5 (W.D. Wash. Aug. 13, 2020) (stating that the Jencks Act and Rule 26.2 are "virtually identical").

### III.   DISCUSSION

The Court addresses each basis for discovery identified by Reyes-Castillo in turn, beginning with Rule 16(a)(1)(E)(i).

**A.  Rule 16(a)(1)(E)(i)**

Reyes-Castillo argues that the requested documents are discoverable under Rule 16(a)(1)(E)(i) because they are both material to preparing the defense and were in the

Government's possession. (Mot. Compel 3:16–5:4).  Reyes-Castillo contends that even if Det. Camacho had not shared the requested documents with the Government, they should nonetheless be considered within the Government's "possession" because "the LAPD is part of the joint investigatory prosecution team." (*Id.* 3:24–26) (citing *Cervantes*, 2024 WL 3101014, at *15–16).  Reyes-Castillo explains that the LAPD "share[d] information with a joint task force on MS-13" through a series of emails and meetings between LAPD and Las Vegas Metropolitan Police Department ("LVMPD") officers which culminated in "a joint investigatory 'summit meeting' on March 1, 2018." (*Id.* 4:13–26).

In response, the Government avers that the LAPD was not "engaging in a joint investigation" with the federal prosecution. (Resp. 7:4).  While some information was shared between the LAPD and the LVMPD, "furnishing some small set of information" does not transform the LAPD into an agency "acting on the government's behalf." (*Id.* 7:6–9) (quoting *United States v. Cerna*, No. CR 08-0730 WHA, 2009 WL 10823687, at *7 (N.D. Cal. Oct. 5, 2009) (internal quotations omitted)).

The Court first notes that the materiality requirement of Rule 16(a)(1)(E)(i) is met here. The materiality requirement "is not a heavy burden," and will be satisfied where the requested evidence "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Liquid Sugars, Inc.*, 158 F.R.D. at 471.  Here, Rivas's prior statements would be used to impeach his credibility, thus placing them squarely within Rule 16(a)(1)(E)(i)'s scope.

Whether the Government was in possession of the requested documents is a more difficult question.  Reyes-Castillo relies heavily on *Kyles v. Whitley*, in which the Supreme Court explained "that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." 514 U.S. at 437.  While *Kyles* involved a state prosecution where evidence was in the hands of state

police, the Ninth Circuit in *United States v. Price* extended it to cover a federal prosecution which used a federalized local police officer as its "lead investigative agent." *Cerna*, 2009 WL 10823687, at *7 (citing *Price*, 566 F.3d at 908–09).  Indeed, Ninth Circuit caselaw consistently imputes *Kyles*'s "duty to learn" to evidence held by *agents* of the Government. *See, e.g., Cano*, 934 F.3d at 1023 ("Because prosecutors are in a unique position to obtain information known to other agents of the government, they have an obligation to disclose what they do not know but could have learned.") (cleaned up); *Price*, 566 F.3d at 909 (holding prosecutor had a duty to learn of and disclose favorable evidence in the possession of its "lead investigative agent"); *Carriger*, 132 F.3d at 479–80 ("[T]he prosecution has a duty to learn of exculpatory evidence known to others acting on the government's behalf.").

Thus, the question which the Court must answer is whether the LAPD was an agent of the federal prosecution in this case.  Two district court cases from the Northern District of California are instructive here.  In *Cerna*, a criminal RICO prosecution of MS-13 members, the district court considered whether the federal prosecutors were in possession of records held by the San Francisco Police Department ("SFPD"). 2009 WL 10823687, at *2, *10.  There, defendants asserted that the SFPD acted as the Government's "agent" for *Brady* purposes, and thus the Government had a duty to disclose records in the possession of the SFPD. *Id.* at *2. After conducting an evidentiary hearing, the *Cerna* court concluded that "[t]here was a substantial degree of cooperation between the SFPD and the federal government." *Id.* at *4. Specifically, the district court found, among other things, that "evidence seized by the SFPD in connection with state criminal investigations was forwarded to federal agents;" "SFPD officers were present at a federal debriefing of suspected MS-13 members;" a written cooperation agreement was executed between the SFPD and federal investigative task force; and there was "an on-going process of 'informal' information sharing between various SFPD officers and federal law enforcement agencies." *Id.*

Notwithstanding that cooperation, however, the *Cerna* court concluded that the SFPD was not analogous to the "lead investigative agent" in *Price*, and thus the Government's *Brady* and Rule 16 obligations did not extend to SFPD records. *Id.* at *6.  The district court emphasized that the "SFPD did not subject itself to the direction and control of federal authority for purposes of gathering evidence in the case," and "neither the SFPD nor its materials" were under federal control. *Id.* at *5.  While the SFPD provided federal authorities with records either via subpoena or "voluntarily upon request," that did "not constitute 'acting on the government's behalf.'" *Id.* at *6.  The court explained that, were it to hold otherwise, "every person who cooperates with a federal investigation would be deemed a federal agent and the federal prosecutor would be deemed to have constructive knowledge of everything in his or her possession, custody or control." *Id.*

Similarly, in *United States v. Cervantes*, the district court concluded that the federal prosecution's *Brady* and Rule 16 obligations did not extend to every document in the California Department of Corrections and Rehabilitation's ("CDCR") possession because the interaction between the federal prosecution and CDCR amounted to "informal information sharing." 2024 WL 3101014, at *8–10; *see also United States v. Yandell*, No. 2:19-cr-00107-KJM, 2024 WL 1678762, at *2 (E.D. Cal. Apr. 18, 2024) ("Because nothing in the record before the court supports the conclusion the CDCR acted as the federal government's agent, let alone its lead investigative agent, the government in this case cannot be deemed to have access to CDCR documents generally; therefore it cannot be compelled to produce materials within the CDCR's exclusive possession.") (citation omitted).

Like the cooperation between the federal prosecution and state agencies in *Cerna* and *Cervantes*, the LAPD's cooperation with the Government here is far too attenuated to support the conclusion that the LAPD acted as the Government's agent or "lead investigative agent." To be sure, the LAPD did share information with the LVMPD and with the Government.

(Transcript 4/27/2026 30:6–12); (Transcript 5/13/2026 104:14–105:6, ECF No. 570). However, this at best resembles the "informal information sharing" in *Cerna* and *Cervantes* that was insufficient to characterize the state agencies there as agents of the Government. Indeed, as Reyes-Castillo admits, the bulk of information sharing occurred between the LAPD and the LVMPD, with only a subset of information being directly transferred between the LAPD and the Government. (Mot. Compel 4:16–5:1); (*see* Transcript 5/13/2026 106:2–3). Further, nothing in the record suggests that the LAPD subjected itself to the control of the Government, nor that the Government had access to the LAPD's records. Without more, the LAPD cannot be labeled an agent of the Government, much less a "lead investigative agent" as described in *Price*. Thus, the Court finds that the Government was not in possession of the requested documents here, and they are not discoverable under Rule 16(a)(1)(E)(i).[3]

### B. The Jencks Act

The Court next turns to the Jencks Act. Reyes-Castillo asserts that the requested documents are discoverable under the Jencks Act because they are "statements" of Rivas that relate to the subject matter of his testimony. (Reply 5:4–23, ECF No. 557). The Government contends that the requested chronology log is not a "statement" under § 3500(e)(1)–(2) because there is "no indication" that Rivas reviewed, signed, or otherwise adopted the log, nor that it is "a transcription of an oral statement made by the informant." (Suppl. Resp. 5:22–6:13, ECF No. 539). Further, the Government argues that because Rivas will only testify about the February 2018 firearm transfer, any requested documents which do not relate to that incident "are entirely unrelated to the instant case." (*Id.* 6:15–7:10). In response, Reyes-Castillo characterizes the subject of Rivas's expected testimony as "his work as an informant in LA and Las Vegas," to which the requested documents relate. (Reply 5:20–23) (citing 18 U.S.C. §

---

[3] While Reyes-Castillo also requests all documents pertaining to Rivas in the possession of the LVMPD and HSI, his argument focuses exclusively on the LAPD. (Mot. Compel 3:9–11); (Reply 6:1–7:17, ECF No. 557).

3500(b)).

However, the Court need not decide whether the requested documents are "statements" within the scope of § 3500(e) or whether they are "relate[d] to the subject matter as to which the witness has testified" because the Government here did not have possession of the requested documents. 18 U.S.C. § 3500(b).  The Ninth Circuit has consistently required actual possession by the Government to satisfy the "possession" requirement of the Jencks Act. *See, e.g.*, *United States v. Fort*, 472 F.3d 1106, 1116 (9th Cir. 2007) ("[T]he text of the [Jencks Act] requires that the government disclose all witness statements, regardless whether state obtained or federally obtained, so long as the statements are in the *actual possession* of the federal government at the time of the trial.") (emphasis added).  For example, in *United States v. Durham*, the Ninth Circuit held that the prosecutor had no obligation under the Jencks Act to disclose documents in the possession of a state agency because "the United States was not in possession of" those documents. 941 F.2d 858, 859–61 (9th Cir. 1991).

Reyes-Castillo contends that *Kyles* served to soften this "actual possession" requirement, bringing the "possession" analysis under the Jencks Act in line with that of Rule 16. (Reply 6:22–7:17).  However, *Kyles* does not cite the Jencks Act a single time, nor does it give any indication that its holding had any effect outside the *Brady* context. *See generally* 514 U.S. 419.[4]  Further, while Reyes-Castillo correctly points out that *Durham* did not involve a "joint investigation" between state and federal authorities, those agencies were "exchanging information." 941 F.2d at 860.  The interactions between the LAPD and the federal prosecution here resemble that dynamic; as explained above, mere informal information sharing cannot convert the relationship between federal and state agencies into that of a "joint investigation." (*See* Section (III)(A)); *see also Cervantes*, 2024 WL 3101014, at *10 (stating that the presence

---

[4] In any event, even if the "possession" analysis under the Jencks Act were identical to that of *Brady* and Rule 16, Reyes-Castillo's "possession" argument would fail for the same reasons as discussed in Section (III)(A).

of state officials at federal task force debriefings did not evidence a joint investigation between federal and state authorities).  More still, the bulk of the information exchange here took place between the LAPD and the LVMPD, placing the instant case even further from a "joint investigation" than *Durham*.

In sum, Reyes-Castillo fails to show that the Government here was in possession of the requested documents, foreclosing applicability of the Jencks Act.  Because Reyes-Castillo fails to establish a claim to discovery of those documents under both Rule 16(a)(1)(E)(i) and the Jencks Act, the Court DENIES the Motion to Compel.

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant Reyes-Castillo's Motion to Compel, (ECF No. 524), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Vargas-Escobar's Joinder, (ECF No. 528), is **GRANTED**.

**DATED** this __14__ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court